Reta Louise ALSTON et al *v.*
John Harold ALSTON and His Wife

84-21                                     669 S.W.2d 909

Supreme Court of Arkansas
Opinion delivered June 11, 1984

*Martin, Vater & Karr,* by: *Charles Karr,* for appellants.

*Turner, Mainard & Whitehead,* by: *Lonnie Turner;* and *Woolsey & Wilson,* by *Bruce R. Wilson,* for appellees.

GEORGE ROSE SMITH, Justice. In 1936 A.W. Alston died intestate, survived by five children and the descendants of a deceased child. In 1937 Alston's heirs divided his 2,943.75 acres of land in Franklin County, by agreement. The surface interest was allotted in specific shares by an exchange of warranty deeds, with Ashley Alston receiving the 708 acres involved in this suit. That part of the agreement dividing the minerals, however, was decidedly ambiguous. Several producing gas wells were drilled on different tracts from time to time, but the descendants divided the royalties amicably by signing for each well a division order by which the royalties were shared by the six branches of the family in six equal parts. Through the years almost all the 2,943.75 acres has remained in the Alston family.

In 1982 the appellees, John Harold Alston and his wife, had acquired from the other descendants of Ashley Alston their entire interest in the 708 acres allotted to Ashley (John Harold's father). The appellees then brought this suit in equity against the members of the other five branches of the family, alleging that the 1937 agreement dividing the mineral ownership had expired by its terms or was otherwise void. The plaintiffs asked that they be declared to be the sole owners of the minerals underlying the 708 acres in question.

After an extended trial the chancellor held that the central issue had been decided in 1952 in an earlier suit, which was res judiata. The chancellor held that the 1937 agreement, as construed in the 1952 suit, had the effect (1) of vesting an undivided half of the minerals in each tract in the particular child (or the chidren of the one deceased child) who received the surface interest in that tract, and (2) of leaving the other undivided half of the mneral ownership in the entire 2,943.75 acres undisturbed, so that the Alston heirs continued to be tenants in common of that half interest. Some members of the family have acquiesced in the chancellor's decree, but others have taken this appeal, which comes to us under Rule 29(1)(n).

We quote the pertinent language in the 1937 agreement, which was signed on the same date the deeds were exchanged and must be read together with those deeds:

### An Agreement As To the Division
### Of Rentals And/Or Royalties

Under this agreement, each of the six heirs at law of A.W. Alston, deceased, shall share equally in all rentals derived from any lease now existing upon any part of the lands belonging to the said A.W. Alston estate, or from any future lease granted upon such lands by any one of the said six heirs. In addition, it is further agreed that any royalty which may arise in the future, shall also be equally dividing among the six heirs, whether such rentals or royalties shall be derived from oil, gas or other minerals lying in and under said lands or any part thereof.

It is further agreed that none of the said six heirs shall sell any part of the land this day divided, without reserving an undivided one-half interest in and to all oil, gas, coal or other minerals lying in or under the land conveyed, which one-half interest so reserved shall be shared in equally by all of the said six heirs. . .

The detailed 23-page 1952 decree was rendered in a suit brought by Arkansas Western Gas Company, the holder of an oil and gas lease on some of the Alston property. All the Alston descendants were parties to the case. Their various interests were determined, that being the purpose of the suit. The court found that the 1937 "Alston Agreement," which we have quoted, was valid and was binding on all the Alston heirs. The court also found, with respect to 240 of the 708 acres new in issue, that members of the Ashley Alston branch of the family then owned "an undivided 7/12th interest" in the minerals in the 240 acres that were included in the plaintiff's lease. (The appellees' brief quotes the 1952 decree as having referred to an undivided "71/2ths" interest instead of "7/12ths," but such an obvious typographical error, if it occurred, would properly by corrected by a court construing the language in the decree. See *Murphy* v. *Cook*, 202 Ark. 1069, 155 S.W.2d 330 [1941].)

The court's finding in 1952 that the Ashley branch of the family owned an undivided 7/12ths of the minerals is readily understandable. The Alston Agreement provided that past and future royalties would be shared equally, with the further provision that thereafter none of the six heirs should sell any part of the land without reserving an undivided one-half interest in the minerals, to be shared equally by all six. A reasonable implication of that proviso, evidently accepted by the court in 1952, is that the owner of a particular tract was free to dispose of an undivided half of the minerals for his own benefit, but the other half was to belong to the six branches of the family together. Hence each one of the six surface owners had a one-half interest in the minerals within his allotted land and also had his one-sixth share of the family interest in the other half, making a 7/12ths ownership altogether. All the Alston descendants having been parties to the 1952 suit, the court's interpretation of the Agreement binds them under the principle of res judicata.

The appellants argue, however, that since the entire Alston family joined several times in the execution of division orders that impliedly recognized 100% family ownership in all the minerals rather than in only half, that practical constuction of the 1937 Agreement should be regarded as conclusive or as a basis for an estoppel. It is true, as we held in the case cited by appellants on this point, that when "a question of doubtful construction arises," the courts will generally follow the parties' own interpretation of the contract. *Temple Cotton Oil Co.* v. *Southern Cotton Oil.,* 176 Ark. 601, 3 S.W.2d 673 (1928). Here, however, the 1952 decree settled all possible doubts by giving an exact meaning to the words in the Agreement. That interpretation is binding upon all concerned.

Affirmed.